1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15
16
17

| | |
|---|---|
| ALASKA LOCAL 375 PLUMBERS & PIPEFITTERS TRUST FUNDS; by ROBERT HUBBARD, a Fiduciary,<br><br>        Plaintiff,<br>   v.<br><br>WOLF CREEK FEDERAL SERVICES, INC.,<br><br>        Defendant. | CASE NO. 2:22-cv-00141-TL<br><br>ORDER DENYING MOTION TO DISMISS |

18    This matter comes before the Court on Defendant Wolf Creek Federal Services, Inc.'s

19 motion to dismiss the complaint filed by Plaintiff Alaska Local 375 Plumbers & Pipefitters Trust

20 Funds ("the Funds") (Dkt. No. 24) and Plaintiff's surreply seeking to strike arguments made in

21 reply (Dkt. No. 29). Upon reviewing the relevant record and governing law, the Court STRIKES a

22 new argument raised in Defendant's reply brief and DENIES the motion to dismiss.

23
24

# I.   BACKGROUND

On February 7, 2022, Robert Hubbard, a trustee and fiduciary of the Funds, filed this action to seek delinquent contributions from Defendant Wolf Creek. Dkt. No. 16 ¶¶ 1, 6, 8, 21. Plaintiff alleges that Defendant was a party to several collective bargaining agreements ("CBAs") and trust agreements which required it to pay specified wages and make contributions to the Funds on behalf of certain employees, as well as submit books and documents to the Funds for inspection upon notice. *Id.* ¶¶ 8–10. Though the Funds contend that its auditors do not have payroll records for Defendant's employees from December 17, 2015, through December 2017, they estimate that Defendant is delinquent for $446,465.85 in principal fringe benefit contributions for that time period. *Id.* ¶¶ 14–15. Upon review of relevant documents from Defendant for work performed at the Fort Greely Army Base from January 2018 through December 2020, the Funds' auditors have determined that Defendant is additionally delinquent in fringe benefit contributions of $914,381.45 for that time period. *Id.* ¶¶ 12–13. Plaintiff contends that as of October 28, 2021, when it sent Defendant a letter requesting payment for the delinquent contributions (*see id.* at 8–15), Defendant owed a total of $1,912,969.88 consisting of: $1,360,847.30 in principal fringe benefit contributions, $136,084.73 in liquidated damages, and $416,037.85 in interest. *Id.* ¶¶ 16–19. Plaintiff has filed this suit under Sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA"). *Id.* ¶¶ 22–32.

Defendant Wolf Creek is a party to two CBAs relevant here. The first is with the Fairbanks Joint Craft Council ("FJCC CBA") and involves, *inter alia*, the following unions "placed into issue by plaintiff": United Association of Plumbers and Pipefitters Local 375 ("Alaska 375"), Alaska State District Council of Laborers Local 942 ("Laborers #942"), International Union of Operating Engineers Local 302 ("Operating Engineers #302"), and The International Brotherhood of Electrical Workers, Local 1547 ("IBEW #1547"). Dkt. No. 24

1    at 2, 4; Dkt. No. 25-3 at 4. The second CBA ("4 Craft CBA") is with the same four unions. Dkt.

2    No. 24 at 2–3; Dkt. No. 25-17 at 4, 7; Dkt. No. 26 at 3.

3           Defendant states that it paid the respective employee fringe benefit contributions under

4    the 2015, 2017, and 2019 FJCC CBAs "pursuant to the work classification provided by each

5    union" to members of Labors #942, Operating Engineers #302, and IBEW #1547 (collectively,

6    along with their respective trust funds, "the Non-Parties"). Dkt. No. 24 at 6–7. However, it did

7    not pay employee fringe benefit contributions to Alaska 375 "because the work codes and

8    allocations provided by the respective unions directed the employee fringe benefit contributions

9    to be paid on behalf of Labors #942, Operating Engineers #302, and IBEW #1547." *Id.* at 7. For

10   this reason, Defendant asserts that this action "challeng[es] the interpretation or application of

11   the 2019 FJCC by asserting the employer trust fund contributions should have been made to

12   Alaska 375 as opposed to the union trust funds for the Labors #942, Operating Engineers #302,

13   and IBEW #1547." *Id.* at 7. Defendant also argues that an attachment to the 4 Craft CBA

14   identifies the different job classifications and fringe benefit contributions allocated for each

15   union's members and that the 4 Craft CBA requires disputes about the interpretation or

16   application of "the job classifications provided by the respective unions and fringe benefits due

17   and payable to the respective union trust funds" to be submitted to mandatory arbitration. *Id.*

18   at 8.

19          Defendant thus insists that Plaintiff "has invoked a *jurisdictional dispute between the*

20   *union trust funds*, involving the interpretation and application of the underlying collective

21   bargaining agreements, subject to mandatory arbitration under the parties' respective collective

22   bargaining agreements," and requests that the complaint be dismissed under Rule 12(b)(6) for

23   failure to state a claim under ERISA, or in the alternative, dismissed under Rule 12(b)(7) for

24   failure to include indispensable parties. Dkt. No. 24 at 2–3 (emphasis in original). Plaintiff

argues that the claim is properly stated under ERISA and not subject to arbitration and that the non-parties are not required to be joined. *See* Dkt. No. 26.

## II.   LEGAL STANDARD

When a plaintiff "fails to state a claim upon which relief can be granted," the defendant may move for dismissal. Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[], the non-moving party.' " *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

Similarly, when reviewing a dismissal pursuant to Rule 12(b)(7) for failure to join indispensable parties under Rule 19, the Court must "accept as true the allegations in Plaintiff's complaint and draw all reasonable inferences in Plaintiff's favor." *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of L.A.*, 637, F.3d 993, 996 n.1 (9th Cir. 2011) (citation omitted). A three-step inquiry is used to determine whether a 12(b)(7) dismissal is warranted:

> 1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?
> 2. If so, is it feasible to order that the absent party be joined?

3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?

*Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citing *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779–80 (9th Cir. 2005)).

## III.   DISCUSSION

**A.     Plaintiff's Surreply and Motion to Strike Portions of Defendant's Reply Brief**

Generally, parties are not permitted to raise new arguments in a reply brief, largely because that deprives the opposing party of an opportunity to respond. *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (affirming district court's refusal to consider an argument raised for the first time in reply). However, a party is allowed to raise "new" arguments in a reply that directly address arguments raised in an opponent's response. *See ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1106 n.14 (9th Cir. 2003) (denying motion to strike " 'new' arguments" raised in reply brief that "were a reasonable response to points made in the [opposing party's] answering brief"); *Convoyant LLC v. DeepThink, LLC*, No. C21-310, 2021 WL 5810638, at *4 (W.D. Wash. Dec. 7, 2021) (same).

Plaintiff filed a surreply seeking to strike the following new arguments raised in Defendant's reply brief: (1) Plaintiff failed to sufficiently plead the second and third elements of an ERISA § 515 claim; (2) Plaintiff is barred from litigating this action until after the union initiates arbitration; and (3) absent arbitration, a jurisdictional dispute must be submitted to the National Labor Relations Board. Dkt. No. 29. The surreply meets all of the procedural requirements of the Local Civil Rules (*see* LCR 7(g)): a notice of intent to file a surreply was timely filed (Dkt. No. 28), and the surreply was filed within five days of the reply brief, was limited to just three pages, and only addressed the request to strike (*see* Dkt. No. 29).

1     The Court finds that the first argument addresses an argument made in Plaintiff's

2  response; indeed, Plaintiff dedicated an entire section to the argument "The Fund Has Pleaded

3  Sufficient Facts To State A Claim Under ERISA § 515." Dkt. No. 26 at 8–9. In addition, the

4  second argument appears to be made in a good-faith effort to support an argument raised in the

5  motion to dismiss. *See* Dkt. No. 24 (repeatedly claiming that this matter raises a jurisdictional

6  dispute that must be resolved through mandatory arbitration).[1] However, the surreply correctly

7  notes that the third argument was raised for the first time in reply, even though it could have

8  been raised in the opening brief. *Compare* Dkt. No. 24 *with* Dkt. No. 27. The Court therefore

9  GRANTS in part Plaintiff's motion and STRIKES Defendant's third argument and does not consider

10 it in its decision.

11 **B.     Dismissal Under Rule 12(b)(6)**

12     Defendant insists that this litigation is being used "not to enforce any provisions in

13 ERISA but to advance a jurisdictional dispute between the four unions, and their respective

14 employee benefit trust funds." Dkt. No. 24 at 10 (emphasis removed). Defendant's opening brief

15 asserts that there is a jurisdictional dispute "as to which union(s) the employee fringe benefits on

16 the Ft. Greely Contract should be paid." *Id.* at 12. Defendant also contends that Plaintiff failed to

17 allege the facts necessary to establish an ERISA violation and that the complaint should be

18 dismissed because it "prejudices defendant's ability to establish an affirmative legal defense

19 against plaintiff's claims" by not identifying the relevant CBAs or trust agreements Defendant

20 has allegedly violated. *Id.*

21

22

_____

23 [1] In concluding a section of the reply brief, Defendant adds that "this matter must be submitted *first* to arbitration by
and between the parties to the collective bargaining agreements." Dkt. No. 27 at 9 (emphasis added). While the

24 Court can understand how this seems to be a subtle attempt to raise an entirely new argument, the context of the
brief as a whole makes clear that it is an extension of the arguments already made in the opening brief.

1.    **Whether Plaintiff Has Established a Claim under ERISA § 515**

To state a *prima facie* claim for relief under ERISA § 515, a plaintiff must show: (1) the trust fund is a multi-employer plan; (2) the defendant is an employer obligated to pay contributions under the terms of that plan; and (3) the defendant failed to pay the required contributions. *Trs. of Eighth Dist. Elec. Pension Fund v. Gietzen Elec., Inc.*, 898 F. Supp. 2d 1193, 1198 (D. Idaho 2012). Defendant claims that Plaintiff has not shown the second and third elements (Dkt. No. 27 at 3–6), but the Court finds that Plaintiff has stated a plausible § 515 claim. Plaintiff has alleged: (1) the trust fund is a multiemployer plan (Dkt. No. 16 ¶ 4); (2) Defendant is obligated to make employee benefit contributions under the trust agreements and CBAs (*id.* ¶¶ 8–10); and (3) Defendant failed to make the contribution payments as required (*id.* ¶¶ 11–20). *See Emp. Painters' Tr. v. Cascade Coatings*, No. C12-101, 2014 WL 526776, at *5 (W.D. Wash. Feb. 10, 2014) (applying the elements of an ERISA § 515 claim) (citation omitted).

Plaintiff's allegations are sufficient for the pleadings stage, at which the Court is required to draw all factual inferences in its favor. *See DaVinci Aircraft, Inc.*, 926 F.3d at 1122. Only in its reply does Defendant complain that it might be exposed to making separate contributions under two CBAs and that the complaint neither specifies "which provision(s)" of the CBAs were violated (and how) nor clarifies "why plaintiff believes the work at issue falls within the scope of work of Alaska #375." Dkt. No. 27 at 4-5. But Defendant clearly knows which two CBAs are potentially at play, as it attached them to its motion. *See* Dkt. Nos. 25-3 (FJCC CBA), 25-17 (4 Craft CBA).[2] "Specific facts are not necessary; the statement need only " 'give the defendant fair

---

[2] Had the complaint been too unclear for Defendant to prepare a responsive pleading, Defendant could have filed a motion for a more definite statement prior to the motion to dismiss that described the deficiencies and the details desired. *See* Fed. R. Civ. P. 12(e) (to be used where a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response"). However, since Defendant did not do so, Defendant concedes that it had enough

1  notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551

2  U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555 (internal citation omitted)). "The theory of

3  the federal rules is that once notice-giving pleadings have been served, the parties are to conduct

4  discovery in order to learn more about the underlying facts." *Starr v. Baca*, 652 F.3d 1202, 1212

5  (9th Cir. 2011)). Critically here, Defendant does not show how its argument or attachments

6  contradict Plaintiff's factual allegation that Defendant is obligated to make employee benefit

7  contributions under the CBAs and trust agreements.

8          Defendant then focuses on semantics, arguing that the auditors had not actually

9  determined that it was delinquent in making contributions based on a statement by the Funds'

10 auditors' boilerplate disclaimer that "[w]e were not engaged to, and did not, conduct an audit, the

11 objective of which would be the expression of an opinion on the employer's fulfillment of the

12 requirements of the Collective Bargaining and Trust Agreements."[3] *Compare* Dkt. No. 27 at 6

13 (Defendant's reply) *with* Dkt. No. 16 at 10–12 (auditor's report). However, the report itself

14 provides a "Summary of Errors in [Defendant] Employer's Contributions Reported to the Fund,"

15 and itemizes the "deficiencies," even including detailed information with regard to the affected

16 individuals. *See* Dkt. No. 16 at 9–15.

17          2.      **Whether a Jurisdictional Dispute Exists**

18          Plaintiff is not bound by the arbitration provisions in the Non-Parties' CBAs. The

19 language of the relevant trust agreements and CBAs do not require Plaintiff to submit to

20

21 notice to "reasonably prepare a response." The Court further notes that Defendant knew which two CBAs were at
   issue when it wrote to Plaintiff on April 14, 2022, to discuss its intent to file a motion to dismiss. Dkt. No. 30-1.

22 [3] In fact, according to their report, the auditors were engaged "to determine if all eligible employees are being
   reported to [Plaintiff] by [Defendant]," and "[u]pon reviewing [] the employer documents and the Collective

23 Bargaining Agreements, the auditors became suspect of certain employees whose job classifications and wage rates
   can be indicative of plumber or pipefitter job classifications." Dkt. No. 16 at 12. The auditors then determined "the
   amount of contributions that would be due to the Alaska Local 375 Plumbers and Pipefitters Funds for this period

24 for these employees." *Id.*

arbitration. Indeed, the trust agreements explicitly state that "[t]he Trustees shall not be obligated . . . to pursue the collection of delinquent accounts through the grievance-arbitration procedures (if any), provided for in the applicable collective bargaining agreement." Dkt. No. 26-1 at 5; *see also* Dkt. No. 26-2 at 5 (using identical language). Both trust agreements also provide that "[t]he Trustees shall have the authority to originate and maintain any legal actions or claims involving potential legal actions, at the expense of the Trust Fund, as they may deem necessary in the administration of the Trust Fund and the benefit plans." *Id.* at 3; Dkt. No. 26-2 at 3–4. Similarly, the FJCC and 4 Craft CBAs respectively provide that: (1) the grievance and arbitration procedures outlined therein are to be used by "the Company and the Union" and union-represented employees; and (2) "[t]he Unions shall not have any right to pursue through the grievance procedure any matter or dispute that arises outside the specific terms of this agreement." Dkt. No. 25-3 at 9; Dkt. No. 25-17 at 13, 15.

In the absence of an explicit requirement that a trust fund arbitrate a dispute with an employer that it alleges is delinquent in making contributions to the trust, the caselaw does not support a requirement that Plaintiff arbitrate its claims. The United States Supreme Court has made clear that there is no presumption of arbitrability in disputes between trustees and employers. *See Schneider Moving Storage Co. v. Robbins*, 466 U.S. 364, 372 (1984) (affirming that trustees of multiemployer trust funds seeking judicial enforcement of employer contribution provisions in trust agreements could sue without resorting to arbitration). In *Schneider*, only the unions and the employers were given access to the arbitration process pursuant to the CBAs at issue, and the Court held that the trustees could seek enforcement of the trust agreements in federal court. *Id.* at 372–76. The Court concluded that "the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, *even if those disputes raise*

*questions of interpretation under the collective-bargaining agreements*." *Id.* at 372 (emphasis added). Following this precedent, the Ninth Circuit has not required trust funds to submit to arbitration to seek delinquent employer contributions, stating that "an intent to subject third-party beneficiaries is not presumed, it must appear from 'the language of the contract, or the circumstances under which it was executed.' " *U.A. Local 342 Apprenticeship & Training Tr. v. Babcock & Wilcox Constr. Co.*, 396 F.3d 1056, 1059 (9th Cir. 2005) (quoting *Schneider*, 466 U.S. at 371).

The Court finds Defendant's cited authorities inapposite and not supportive of dismissal at this stage of the case. In *Local 1020 of the United Brotherhood of Carpenters and Joiners of America v. FMC Corp.*, a union—not its trust fund—filed an action under the Labor Management Relations Act rather than submitting a dispute to arbitration as required by the CBA. 658 F.2d 1285, 1286–87 (9th Cir. 1981). Similarly, as Plaintiff correctly notes, Defendant's three other cited cases revolve around whether arbitration was required when a dispute arose between *parties* to an agreement that had a mandatory arbitration clause. *See* Dkt. No. 26 at 15–16. Here, while the relevant CBAs contain mandatory arbitration clauses, Plaintiff is not a party to either of them. *See* Dkt. No. 26 at 15; *see also United States v. Fid. & Deposit of Md.*, No. C16-5575, 2016 WL 6298790, at *1, *5 (W.D. Wash. Oct. 27, 2016) (plaintiff had agreed to arbitrate disputes in its contract with a defendant); *Pac. W. Sec., Inc. v. Ill. Union Ins. Co.*, No. C12-539, 2012 WL 3763551, at *1 (W.D. Wash. Aug. 29, 2012) (petitioner was a party to insurance contracts with arbitration clauses); *Oakley v. GMRI, Inc.*, No. C13-42, 2013 WL 5433350, at *1–*2 (E.D. Wash. Sept. 27, 2013) (plaintiff signed a form providing that disputes with her employer would be resolved solely through a dispute resolution process that concluded with binding arbitration).

Additionally, Defendant makes no claim that Plaintiff seeks to dispute a decision made in

1    a previous arbitration order (which, in any event, would be more appropriately raised as an

2    affirmative defense and resolved at summary judgment).[4]

3         The Court FINDS that Plaintiff has stated a plausible claim for relief under ERISA § 515.

4    Therefore, the motion to dismiss on Rule 12(b)(6) grounds is DENIED.

5    **C.     Dismissal Under Rule 12(b)(7)**

6         Alternatively, Defendant argues that dismissal is warranted under Rule 12(b)(7) because

7    Plaintiff failed to join as parties the following unions and their respective trust funds: Laborers

8    #942, IBEW #1547, Operating Engineers #302, and Alaska 375. Dkt. No. 24 at 13. Defendant

9    argues that "Alaska 375 is attempting to divert employee trust fund contributions from these

10   other union trust funds to [itself]." *Id.* However, Defendant's argument fails at the first step of

11   the three-step inquiry under Rule 12(b)(7). *See supra* § II (outlining the steps as stated in *Salt*

12   *River Project*, 672 F.3d at 1179).

13        The first step is to determine whether the missing party is necessary to the lawsuit. A

14   party may be necessary to a lawsuit under Rule 19(a) in three different ways: (a) if the Court

15   cannot accord complete relief amongst existing parties if that party is absent from the litigation;

16   (b) if the party has an interest in the lawsuit such that resolving the lawsuit without that party

17   may "impair or impede [its] ability to protect [that] interest"; or (c) resolving the lawsuit without

18   the party may "leave an existing party subject to a substantial risk of incurring double, multiple,

19   or otherwise inconsistent obligations because of the interest [of the absent party]." Fed. R. Civ.

20   P. 19(a)(1); *accord Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 331 F.R.D. 427, 430 (W.D.

21   Wash. 2019). Additionally, even if the absent party has a legally protected interest in the lawsuit,

22

23   ────────────────

24   [4] Some of the cases Defendant cites in its reply were also decided at the summary judgment stage or via trial, not at the motion to dismiss stage.

ORDER DENYING MOTION TO DISMISS - 11

1   it is not a necessary party if it is "adequately represented in the suit." *Salt River Project*, 672 F.3d

2   at 1180 (citation omitted).

3           The movant bears the burden of persuasion that the case should be dismissed. *Makah*

4   *Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (finding absent tribes to be

5   indispensable parties to a suit). As an initial matter, Defendant's opening brief barely addressed

6   this issue and cited no legal authorities (other than the basic legal standard) or facts to flesh out

7   its argument that the Non-Parties it identified are indispensable parties. *See* Dkt. No. 24 at 13.

8   Defendant merely twice asserts that Plaintiff is attempting to divert employee trust fund

9   contributions from other union trust funds to itself. Dkt. No. 24 at 13.With such little evidence

10  presented, Defendant has failed to show that the Non-Parties are necessary to the litigation. The

11  Court will nonetheless analyze whether the missing parties are necessary to the lawsuit.

12          First, the Court can award complete relief to the Funds without joining the Non-Parties.

13  The relevant scope of the relief is "concerned only with relief as between the persons already

14  parties, not as between a party and the absent person whose joinder is sought." *Fanning v. Grp.*

15  *Health Co-op*, No. C7-1716, 2008 WL 2148753, at *3 (W.D. Wash. May 21, 2008). A union is

16  not a necessary party to accord complete relief in a suit by a trust fund against an employer

17  delinquent in making contributions where, as here, "the fact finder will decide whether [the

18  employer] owes contributions to the Fund under the operative agreements" and "[t]he Union's

19  participation as a party is not necessary to understand those agreements." *See id.* (citing *Eldredge*

20  *v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 662 F.3d 534, 537

21  (9th Cir. 1981)). Nor is any union's presence necessary in this case "to determine whether the

22  Funds are entitled to an audit and unpaid contributions and dues." *See Laborers' Pension Fund v.*

23  *McKinney Constr. Corp.*, No. C99-5435, 2000 WL 1727779, at *4 (N.D. Ill. Nov. 21, 2000).

24  Indeed, "impleading the union[s] would be inconsistent with the purposes of ERISA in providing

a streamlined and simplified procedure for employee benefit trust funds to collect delinquent contributions." *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir.1986).

The Non-Parties also lack sufficient interest in the lawsuit. Plaintiff aptly points out that "Wolf Creek has not identified any interest that the Nonparties have in this action" and believes that none of the Non-Parties at issue have come forward to claim an interest. Dkt. No. 26 at 20; *see also In re Cty. of Orange*, 262 F.3d 1014, 1023 (9th Cir. 2001) (holding that where non-parties had been silent in an action, the defendant could not claim that those non-parties had "a legally protected interest in the action").

Finally, Plaintiff contends that Defendant has failed to even assert that the Non-Parties' absence would risk leaving an existing party subject to inconsistent obligations. Dkt. No. 26 at 21. In reply, Defendant baldly asserts, without proof, only that "[s]hould any of the other unions or trust funds take issue [with Defendant ceasing to provide work to and ceasing to pay fringe benefit contributions on behalf of members of the other three unions due to a favorable decision for Plaintiff], they may demand arbitration exposing Wolf Creek to potentially inconsistent arbitration awards." *See* Dkt. No. 27 at 10–11. The Court need not consider this new argument that could and should have been raised in Defendant's motion. *See Zamani*, 490 at 997. Even if considered, this one statement does not establish that the instant suit risks exposing Defendant to inconsistent obligations vis-à-vis the multiple unions involved in the FJCC and Craft CBAs. *See also Makah*, 910 F.2d at 558 (movant bears burden of persuasion in arguing for dismissal for failure to join indispensable parties). And Plaintiff has explained that the Funds seek "only the appropriate contributions that should have been made by Wolf Creek," and does not "stake claim to any contributions made to any other multiemployer fund." Dkt. No. 26 at 19. Nor does Plaintiff request to change any of the obligations under the CBAs. *Id.* at 21.

On this showing, the Court is not satisfied that any of the Non-Parties are necessary—let alone indispensable—parties to the litigation. Therefore, the motion to dismiss on Rule 12(b)(7) grounds is DENIED.

## IV.   CONCLUSION

For the above reasons, the Court GRANTS Plaintiff's motion to strike in part (Dkt. No. 29), STRIKES portions of Defendant's reply brief (Dkt. No. 27) and DENIES Defendant's motion to dismiss (Dkt. No. 24).


Dated this 21st day of February, 2023.


Tana Lin
United States District Judge